IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 09-00353-10-CR-W-ODS |
| ) | |
| LONNIE GOODRICH, ) | |
| ) | |
| Defendant. ) | |

<u>FINDINGS OF FACT AND CONCLUSIONS OF LAW FINDING DEFENDANT GUILTY
OF CONSPIRING TO DISTRIBUTE FIFTY GRAMS OR MORE OF COCAINE BASE
AND SETTING DATE FOR SENTENCING</u>

Defendant has been charged with conspiring to distribute more than fifty grams of cocaine base ("crack"). A bench trial was held on March 26 and 27, 2012. The Government bore the burden of proof, and it was obligated to prove each of the elements of the crime beyond a reasonable doubt. <u>E.g.</u>, <u>United States v. Spires</u>, 628 F.3d 1049, 1054 (8th Cir. 2011) (describing reasonable doubt standard).

All of the Court's factual findings have been established beyond a reasonable doubt. For the reasons set forth below, the Court concludes Defendant is guilty of the crime charged in Count I of the Superseding Indictment.

## I. FINDINGS OF FACT

Personnel from local law enforcement agencies and the Bureau of Alcohol, Tobacco and Firearms were members of a joint task force referred to as "Nitro." Nitro investigated armed drug offenders, and one of its investigations in 2008 and 2009 involved the 4600 block of Chestnut in Kansas City, Missouri. This particular investigation started in approximately August of 2008 with some controlled purchases of crack from Charles Davis. Many of the controlled purchases involving Davis occurred at other locations around the city, but surveillance observed that he always returned to the 4600 block of Chestnut. In addition, a great many drug transactions took place on

that block. Typically, cars drove up and one of various individuals would sell crack to the driver or passenger through the car window. Sellers on the street included (but were not limited to) Dwayne Guy, Jamar Johnson, Delvon Atkinson, Craig Sowell, Christopher Jackson, Domynick Hubbard, and Gerome Guy. This activity was confirmed at trial through various means, including testimony from Johnson and Dwayne Guy,[1] photographs taken from a camera Nitro placed on a telephone or light pole (the "pole cam"), and testimony from Nitro members Deputy Eric McAllister, Special Agent Christie Weidner, and Deputy Greg Coon.

Nitro observed a connection between the drug activity and a specific address on the 4600 block: 4634 Chestnut. In particular, sellers were observed coming out of and entering this house before and after drug sales on the street. These observations, combined with other information, resulted in the issuance of a search warrant for 4634 Chestnut.[2] The warrant was executed on September 23, 2009. Four people were found in the house: Defendant, Sowell, Guy, and Donald Dixon. Small amounts of crack were found in the house and in Sowell's possession. Defendant and Guy possessed marijuana, and Dixon had a crack pipe. Also found in the house were: (1) small quantities (less than a gram total) of crack in baggies, (2) an electronic scale, (3) five different types of ammunition (but no firearms), (4) a surveillance system allowing individuals in the house to see people approaching the front door, and (5) a syringe, a spoon with cocaine residue, and other paraphernalia.

Most, if not all, of the sellers on the block were connected. Davis, Christopher Eubanks, and Kalin Lenoir were the primary suppliers for the other sellers, and of these Davis was the principal supplier. Guy and Johnson both sold an "8-ball" (3.5 grams) of crack daily or every other day, and Davis was their supplier. Davis charged them $80 to $100 for an 8-ball, which they then cut, packaged into smaller quantities, and sold for a

---

[1] All future references to "Guy" are references to Dwayne Guy unless the context indicates otherwise.
[2] The Court received another Motion to Suppress the day after the trial concluded. This motion, like Defendant's earlier motions, contends the search warrant was unlawful because it was not issued by a grand jury and Defendant had not yet been charged with a crime. As with the prior such motions, this motion (Doc. # 459) is denied.

total of approximately $200. This pricing structure was similar for all the sellers on the street.

Defendant's connection to the drug activity was as "manager" of the house at 4634 Chestnut. The house was owned by Defendant's mother, but she did not live there. Numerous witnesses – including Johnson, Guy, and Peter Morris -- testified Defendant and his girlfriend (Temika Bankhead) lived at the address; in addition, Defendant arranged to receive his mail (including his monthly social security checks) at this address and he used this address on his driver's license. During his unsworn statement to the Court Defendant denied living at the address, but he admitted that he was at the house regularly because it was a "family house" that was otherwise vacant.

Defendant made the house available to the other members of the conspiracy for several purposes. It was a place where the crack was cut and packaged. It was a place where customers could smoke their crack if they wanted to do so on the premises. It was also used by the drug dealers to escape the heat, smoke crack or marijuana, use the restroom or otherwise take a break. The sellers provided Defendant with a portion of their crack (typically, one or two pieces worth $10 each) in exchange for their ability to use the house. When Defendant was not "paid," he would get angry and belligerent and often forbade sellers from using the house. In addition, at the beginning of each month (after receiving his social security check), Defendant purchased an 8-ball from Guy, Johnson, or another seller at their cost so he would have a supply to sell to his own customers inside the house.

## II. CONCLUSIONS OF LAW

Defendant is charged with conspiring with, among others, Davis, Johnson, Atkinson, Lenoir, Dwayne Guy, Gerome Guy, Hubbard, Jackson, Eubanks, and Sowell, to sell more than fifty grams of crack in violation of 21 U.S.C. ss 846. This charge requires proof that (1) there was a conspiracy – that is, an agreement to distribute drugs, (2) the defendant knew of the conspiracy and its essential purpose, and (3) the defendant intentionally joined the conspiracy. E.g., United States v. Jackson, 610 F.3d

3

1038, 1044 (8th Cir. 2010); United States v. Jiminez, 487 F.3d 1140, 1146 (8th Cir. 2007). The Government need not prove an express agreement existed; it is enough if the Government proves a tacit understanding among the participants. This tacit understanding can be established by relying upon circumstantial evidence. E.g., United States v. Cabrera, 116 F.3d 1243, 1245 (8th Cir. 1997).

### III. CONCLUSIONS

The Court concludes a conspiracy to distribute more than fifty grams of crack existed. Davis, Eubanks, and Lenoir sold 8-balls to others, who then cut and packaged the crack for resale to customers/users. Minimally, just two of the sellers -- Guy and Johnson bought an 8-ball (3.5 grams) from Davis for resale once every day or every other day. This happened from at least August 2008 to September 2009. In addition, approximately 405 grams were purchased in undercover transactions. There is no need to precisely ascertain the full amount of drugs involved in this conspiracy; the evidence establishes that the amount easily exceeds fifty grams.

Defendant knew about the conspiracy, knew about its purpose, and joined in it by essentially renting 4634 Chestnut to the conspiracy's members. Defendant admitted during an interview with Deputy McAllister that he had been a drug seller on the block for several years, that he introduced Davis to other sellers on the block, and that Davis was now one of the primary suppliers. The evidence also establishes that, in exchange for payment in the form of crack, Defendant allowed the house to be used as a base of operations where the other conspirators could prepare their drugs for sale, take breaks or engage in other conspiracy-related activities. The house also provided the conspiracy's customers with a place to use narcotics. Finally, Defendant was involved in the conspiracy because he obtained crack at cost for resale to his own customers inside of the house.

Defendant argues that he did not live at 4634 Chestnut. This point is irrelevant: it does not matter where Defendant slept at night, nor does it matter where he subjectively claims his home was located. The evidence establishes that Defendant had dominion

and control over the house, and exercised that dominion and control by allowing it to be used to further the conspiracy's unlawful purpose in exchange for items of value (namely, pieces of crack).  Defendant also points out that he is not depicted in any pictures taken by the pole cam.  While true, this point is also irrelevant.  First, the evidence established Defendant conducted all of his activity inside the house.  The pole cam was aimed in a manner designed to photograph the activity on the entire block and was not aimed inside 4634 Chestnut.  The fact that Defendant was not depicted in any pictures from the pole cam is neither surprising nor probative.  Second, the pole cam was operational for only a limited period of time.  It was initially activated on April 1, 2009, but it was destroyed with gunshots on May 3.  A second camera was installed on July 7, and it was destroyed on July 28.  Defendant was arrested on other charges in the middle of April and was in jail most of the time the pole cam was operational.

Defendant also contends that Guy's and Johnson's testimony must be rejected because they agreed to testify in exchange for sentencing considerations from the Government.  The Court had an opportunity to observe the witnesses' demeanor and evaluate their credibility.  The Court finds that the Government's offers induced the witnesses to testify, but it did not induce the witnesses to fabricate testimony.  The Court finds Guy and Johnson were credible witnesses in this matter.

The Court finds, beyond a reasonable doubt, that Defendant is guilty of the crime charged in Count I of the Superseding Indictment.  The Probation Department is directed to prepare a presentence investigation report.  Sentencing will take place at 1:15 p.m. on July 31, 2012.

The Clerk of Court is directed to provide a copy of this Order to the United States Marshal for delivery to Defendant.

IT IS SO ORDERED.

DATE: April 4, 2012

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
UNITED STATES DISTRICT COURT